## ATKINS, *adx.*, *et al.*, *v.* BUSBY, *ad.*

B. executed a bond of conveyance of real estate and slaves, reciting that he had bargained and sold the same to A., conditioned to deliver possession at a future day on payment of a part of the purchase money, and to make, execute and deliver a good and sufficient deed of conveyance on payment of the residue ; the part payment was made and possession delivered; before the payment of the residue of the purchase money, slaves were emancipated by the Government. *Held*, that the contract was an executory, not an executed contract ; that the legal title to the property did not pass to the vendee; that as the slaves were manumitted by the act of the Government, before the consummation of the contract and conveyance of the property, the consideration had failed to the extent of the value of the slaves.

Chancery will not decree the rescision of a contract, where no such issue is made, and where substantial justice may be done on the issues presented.

*Appeal from Jefferson Circuit Court in Equity.*

Hon. WILLIAM M. HARRISON, Circuit Judge.

WATKINS & ROSE, for appellants.

The contract in this case was an agreement of sale, not a sale consummated. No title passed—the stipulations being that the title was to pass at a future time, on the performance of certain conditions by each party, which conditions appellants have been and are ready to perform on their part, but the appellee is unable to perform the condition on his part. The title to the property was to remain in the vendor until payment; and had not passed to the vendee at the time of the emancipation of the slaves; and, as he can not convey such title as he contracted to convey, the consideration has clearly failed to the extent of their value. *1 Parsons on Con., 441, 435, 448,* and cases cited in note 99, p. *449; Reed v. Upton, 10 Pick., 522; 17 Verm., 176; 9 N. H., 298; McBride v. Mitchell, Gro. Dec., part 1, 165.*

Failure of consideration affects the right to recover *pro tanto.* *2 Bibb, 103; 1 Parsons on Con., 387.* A total inability of one party to comply with his part of a contract should absolve the other party from a compliance. *1 A. K. Marsh., 177; 4 Root, 464; 2 Brock., 185; 5 J. J. Marsh., 135.*

WALKER, C. J.

Jesse Busby, as the administrator of the estate of Wilson W. Busby, deceased, filed his bill of complaint against the administratrix and heirs at law of James H. Atkins, deceased, to enforce a vendor's lien for the purchase money of certain lands covenanted to be conveyed, under the following instrument, to wit:

"Know all men by these presents, that I, Wilson W. Busby, of Jefferson county, State of Arkansas, am held and firmly

12

bound unto James H. Atkins, of the county and State aforesaid, in the sum of forty thousand dollars, for the payment whereof well and truly to be made, I bind myself, my heirs, executors and administrators firmly by these presents. Signed and sealed at the county and State aforesaid, on the 2d day of April, 1859.

"The condition of the above obligation is such, that whereas the above bound Wilson W. Busby, in the consideration of thirty-five thousand one hundred dollars, to be paid to him by the said James H. Atkins, as follows, to wit: the sum of eight thousand seven hundred and seventy-five dollars on the first day of January, A. D. 1860, and the like sum on the 1st day of January, 1861, and the like sum on the 1st day of January, 1862, and the residue or like sum on the 1st day of January, 1863, with interest on said several instruments at the rate of ten per cent. per annum, from the 1st day of January, 1860, until paid; to secure the payment of which said purchase money, and the interest as aforesaid, said James H. Atkins has this day executed and delivered to the said Wilson W. Busby his four several promissory notes of even date herewith, each for the sum of eight thousand seven hundred and seventy-five dollars, payable with interest respectively as aforesaid, reference being thereto had will more fully appear, has granted, bargained and sold unto the said James H. Atkins the following described real estate, slaves and personalty [describing the property]. Now, therefore, if the above bound Wilson W. Busby shall, upon and after the full payment of thirty-five thousand one hundred dollars, purchase money, with the interest thereon, as aforesaid, to him, by the said James H. Atkins, according to the tenor and effect of the four promissory notes aforesaid, make, execute and deliver to the said James H. Atkins a good and sufficient deed of conveyance in fee simple, with the usual covenants of general warranty, of all and singular the lands, negro slaves and property aforesaid, and if the above bound Wilson W. Busby shall, on and after the payment of the first installment of the purchase money

aforesaid, to wit: the sum of eight thousand seven hundred and seventy-five dollars on the 1st day of January, 1860, to him, by the said James H. Atkins, the possession of the lands, negro slaves and personalty aforesaid; the soundness of the negro named Sarah, embraced in the above list, is not to be warranted by the said Wilson W. Busby, but in the event of the death of any of the negro slaves, before the time for the delivery thereof, without the fault or negligence of the said Busby or his agent, said Busby is not to be held responsible for such negro or negroes as may die, or lose the value of the same in the trade; then the above obligation shall be and become null and void, otherwise remain in full force and virtue."

The defendants insist that this is a contract to sell, not a sale; under which, although possession was, at a given day, to be delivered, the title to the property was reserved by Busby in himself until it was paid for, and that since the making of the agreement to purchase, the slaves, which constituted a large part of the consideration for which the notes were given, have been emancipated, whereby it has, by the act of the Government, become impossible for Busby or his representatives to comply with his contract, so far as relates to the slaves; and therefore the consideration for which the notes were given has to that extent failed.

In the case of *Haskill, ad., v. Sevier, ad.,* decided at the present term of the court, we had occasion to examine this question, so far as relates to the effect of the emancipation act upon the validity of an executed contract for the sale of slaves, and held, that such executed contract was not affected by the subsequent Government act of emancipation. The question in this case is, as to the effect of the emancipation act on executory contracts which remained unexecuted at the time that the emancipation act took effect.

The first question to be determined is, was the contract in this case an executed or an executory contract? Did Busby, in fact, sell the lands and negroes to Atkins, or did he covenant to sell upon the happening of a named contingency? We

confess that this question is not altogether free from doubt, but taking the whole contract together, in view of its several stipulations, we are led to believe that it was not the intention of the parties to make an absolute sale of the property, but that Busby intended to retain the title to it in himself until the purchase money was paid. The contract was made in April, 1859 ; the first payment was to be made on the first day of January thereafter, and it was only upon condition that such payment was made, that Busby agreed to deliver the property. Now we think it very clear that if Atkins had failed to make the first payment at the time stipulated, that Busby, who then retained not only the title but the possession of the property, was under no obligations whatever to deliver the property. The covenant to deliver the negroes at that time, and upon that contingency, was a distinct covenant from that to convey, which was not to be made until all of the purchase money was paid. The delivery, then, was an act under a special covenant for possession and use, and not an act in affirmance of a sale, the effect of which would be to vest in Atkins a title to the property. The parties certainly had a right, by express stipulation, to explain and qualify the effect of such delivery of possession, which we think they have done in this instance. If it had been understood or intended that the sale was absolute and complete at the time when made, no stipulation would have been made with regard to the slave Sarah, that she was not to be warranted sound. It was doubtless understood between the parties, that the soundness of the other slaves was to be warranted, and in fear that it might be claimed by Atkins, at the time of sale, that they were all to be warranted sound, this exception was made. It is true that the terms, " granted, bargained and sold," if disconnected from other stipulations, would import an absolute sale ; but, when taken in connection with other stipulations, and the express covenant that when all of the purchase money was paid Busby would convey the property, both land and negroes, by deed of warranty of title, it is probable that such was not the intention of the parties, but that Busby in-

tended to hold the title to the property in himself until the last payment was made. And, thus considered, we must hold it a contract to convey, one in which the title was not to pass until the happening of a contingency therein expressed; and, when such is the case, it is well settled that the title to the property does not pass until the stipulations are complied with.

Parsons, in his work on Contracts, page 449, says: "But where the right to receive payment before delivery is waived by the seller, and immediate possession given to the purchaser, and yet by express agreement the title is to remain in the seller until the payment of the price on a fixed day, such payment is strictly a condition precedent, and, until performance, the right of property is not vested in the purchaser. And generally, wherever in a contract of sale it is stated that some precise fact is to be done by either party, this may amount to a condition, though not so expressed." In *Read v. Upton, 10 Pick., 522*, a covenant was entered into, by which Read agreed to sell Fowler a brick-pressing machine for the sum of two hundred dollars, to be paid on the delivery of the machine, and that in the mean time Fowler should have the use of the machine until the time of payment, and Fowler executed to Read his note for two hundred dollars, payable on a day therein mentioned, Shaw, C. J., who delivered the opinion of the court, said: "This contract is an executory and not an executed contract of sale. It was obviously the intent of the parties that the property should remain in the vendor, and there is no rule of law to prevent the intention from being carried into effect; but as the act contemplated was never performed, no property passed, and the machine remained the property of the plaintiff." See, also, *Martin v. Mathoit, 14 Serg. & R., 214; Rose v. Story, 1 Barr, 190.* So, in the case before us, there was a delivery of the negroes before the time fixed for payment of the entire purchase money, and the execution of the conveyance for them, but such delivery was clearly a delivery for use, just as the brick machine was delivered, under a separate covenant, which the parties most clearly had the right to make, or even where

not made in express terms, may often be inferred from the various stipulations of the contract, and the order in which they are to be performed, and, being thus made, the title to the slaves in this case remained in Busby, the use and possession of them in Atkins, at the time they were, by the provisions of the Constitution, emancipated.

Two of the notes remaining unpaid, Busby's administrator has brought this suit, in which he claims a vendor's lien on the land so contracted, and asks that the land may be sold to satisfy these notes. Atkins having also died, his administratrix answers that she is willing and ready to pay the balance of the purchase money, but that it is out of the power of Busby's representatives to make title to the slaves, as he contracted to do, and such being the case, and because the slaves, by the act of the Government, have been discharged from further service, we must hold that the consideration for which the notes were given has failed, to the extent of the value of the slaves, and as they were proven to have been worth, at the time the contract was made, sixteen thousand dollars, in equity and good conscience Atkins' administratrix is entitled to a credit upon the notes remaining unpaid, to that amount, with a corresponding abatement of interest upon the debt remaining due at the time the negroes were emancipated, to wit: The time when the present State Constitution was ratified, the said sum of sixteen thousand dollars to be entered a credit as of that date, and applied first to the payment of the interest then due, and the balance to the payment of the principal, as far as it may extend, after which, whatever sum may remain still due upon said notes, and due from Atkins' administratrix to Busby's administrator, should be decreed to the complainant, and for the payment of which they are entitled to a vendor's lien.

Counsel have argued that Atkins' administratrix and heirs are entitled to a rescision of the contract, and to have the money paid upon it restored to them; but this question is clearly beyond the scope of the issue formed between the parties. The defendants might have raised this question by

cross-bill, and if, in view of the whole case, we felt satisfied that the equitable rights of the parties required it, we might remand the case, with leave to amend; but, from the facts of the case before us, we think that substantial justice may be done under the present issue; and it may be remarked that contracts are rarely rescinded, where, as in this case, there was but a partial failure of consideration without fraud, and where the parties can not be restored to the condition in which they were before the contract was made; and we will, therefore, direct that the decree in this case be set aside and reversed, and the cause be remanded to the court below, and that a decree be made in accordance with the opinion herein expressed, and in other respects according to the prayer of the complainant's bill for the sale of the lands so contracted to Atkins, or so much thereof as may be necessary to satisfy and pay the residue of such debt, together with interest and cost of suit in the court below, and that the appellee pay the costs in this court.